## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

HANOVER AMERICAN INSURANCE          )
COMPANY, on behalf of all others           )
similarly situated,                                    )
                                                                 )
              Plaintiff,                     )
                                                                 )
vs.                                                              )
                                                                 )
GREGORY A. SAUL, *et al.*,                     )          NO.  CIV-12-0922-HE
                                                                 )
             Defendants.              )
                                                                 )
DEBORA K. BALFOUR and DR.              )
DEBORA K. BALFOUR                             )
CHIROPRACTIC, P.C.,                             )
                                                                 )
           Third-Party Plaintiffs,    )
                                                                 )
vs.                                                              )
                                                                 )
NCMIC INSURANCE COMPANY,               )
                                                                 )
        Third-Party Defendant.  )

## ORDER

Hanover American Insurance Company ("Hanover") filed this declaratory judgment action against Gregory A. Saul, his former spouse, Debora K. Balfour, her business, Dr. Deborah K. Balfour Chiropractic, P.C. ("DKBC") and Matthew A. Briner, individually and as next friend of his daughter A.A.  Hanover seeks a declaration of its obligations under a business owner's policy it issued to Gregory and Debora Saul D.C.   Briner sued Saul, Balfour and DKBC in state court ("the Briner lawsuit") to recover damages he and A.A. allegedly sustained as the result of Saul and Balfour's tortious acts.  Balfour and DKBC asked Hanover to defend them in that lawsuit and it has provided a defense, pursuant to a

reservation of its rights to withdraw the defense and refuse to defend or pay any judgment that is rendered in the case against Balfour or DKBC.

Defendants Balfour and DKBC counterclaimed against Hanover, contending it had a duty to defend and indemnify them and seeking a declaratory judgment and mandatory injunction. They also filed a third party complaint against NCMIC Insurance Company ("NCMIC"), seeking a declaratory judgment and mandatory injunction and asserting claims for breach of contract and bad faith. Those claims are based on a professional liability insurance policy NCMIC issued Balfour and DKBC (collectively "Balfour"). Balfour contends NCMIC has improperly refused to defend her in the Briner case or indemnify her for any damages that might be awarded against her.[1]   NCMIC has filed a motion for judgment on the pleadings or, alternatively, to dismiss the third-party complaint. This order is directed to the NCMIC motion.

<u>Background</u>

In the state court suit, Briner alleges that Saul, Balfour's ex-husband, sexually assaulted A.A., one of Balfour's minor chiropractic patients, and that some of the assaults occurred in the office building where Balfour's clinic is located. Balfour is alleged to have committed medical malpractice by failing to warn her patient of of Saul's "history and propensity to sexually molest under age females," and allowing Saul to have unfettered

---

[1]*NCMIC has been sharing the cost of Balfour's defense in the Briner lawsuit with Hanover under a reservation of rights, but has notified Balfour that the policy does not afford her coverage for defense or indemnification and has asked if she would consent to a withdrawal.*

access to the clinic building. Doc. #15-2. NCMIC asserts that it is entitled to judgment upon the third-party complaint because the insurance policy it issued Balfour "indisputably excludes the acts she is accused of committing." NCMIC's motion, pp. 1-2. Alternatively, it contends that Balfour's complaint fails to state a claim upon which relief can be granted.

<u>Analysis</u>

A motion for judgment on the pleadings is governed "under the standard of review applicable to a Rule 12(b)(6) motion to dismiss." <u>Corder v. Lewis Palmer Sch. Dist. No. 38</u>, 566 F.3d 1219, 1223 (10th Cir. 2009) (internal quotations omitted). Under both rules, the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the  nonmoving party. <u>Anderson v. Suiters</u>, 499 F.3d 1228, 1232 (10th Cir. 2007). Because the pleadings have not closed, NCMIC's motion will be treated as one brought pursuant to Rule 12(b)(6). See Rule 12(c) ("After the pleadings are closed ... a party may move for judgment on the pleadings."). The court's task is to construe the professional liability policy between NCMIC and Balfour, applying Oklahoma law.[2] It must determine whether NCMIC owed Balfour a contractual duty to defend and indemnify her with respect to the negligence claims asserted against her in the Briner lawsuit.

NCMIC initially argues that the claims asserted against Balfour are not covered under the policy. If, however, a failure to warn is considered to be part of a chiropractor's duties,

---

[2]*As this action was removed on the basis of diversity jurisdiction, state law applies. The parties apparently are in agreement that Oklahoma law governs the dispute.* <u>*Mansur v. PFL Life Ins. Co.*</u>*, 589 F.3d 1315, 1319 (10th Cir. 2009) ("Because the parties assume that Oklahoma law applies, we will proceed under the same assumption.").*

NCMIC contends that the policy's exclusions preclude coverage for Briner and A.A.'s claims and that a supplemental legal defense endorsement does not apply.  It asserts that the absence of a duty to provide a defense and coverage bars Balfour's breach of contract and bad faith claims and also argues that, because it is currently providing a defense in the underlying lawsuit, it has not breached the parties' agreement.

The pertinent legal principles are well established.  Under Oklahoma law, insurance contracts are interpreted "in accordance with principles applicable to all contracts." Mansur v. PFL Life Ins. Co.,589 F.3d 1315, 1319 (10th Cir. 2009).  The contract is "construed according to the plain meaning of its language," and, if unambiguous, the court "interprets the contract as a matter of law." *Id.*  "When an insurance contract is susceptible of two meanings . . words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer." Phillips v. Estate of Greenfield, 859 P.2d 1101, 1104 (Okla. 1993).  "I[t] is the expectations of the insured that control" when  "the terms of the contract are unclear, or when the contract is susceptible to two reasonable interpretations." Western World Ins. Co. v. Markel American Ins. Co., 677 F.3d 1266, 1271 (10th Cir. 2012); *accord* Mansur, 589 F.3d at 1319 (Because "[a]n insurance policy is considered a contract of adhesion in Oklahoma, if the contract is ambiguous, it is "construed in favor of the insured.").

A liability insurance policy, such as the policy issued by NCMIC, "generally contains two basic  duties – the duty to defend and the duty to indemnify its insured." First Bank of Turley v. Fid. & Deposit Ins. Co. of Md., 928 P.2d 298, 302-03 (Okla.1996).  The insurer's

duty to defend is broader than the duty to indemnify, and arises whenever the insurer "ascertains the presence of facts that give rise to *the potential of liability* under the policy." *Id.* at 303 (footnote omitted). "[T]here *need not be a probability of recovery*." *Id.* at 303 n.14. "[T]he insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the *possibility of a recovery* under the policy." *Id.*

The NCMIC policy obligates the insurer to "defend any **claim** or suit brought seeking **damages** against the **insured** for an **injury** covered by" the policy. Doc.#15-3, NCMIC policy, p. 4. The policy provides indemnification for "all sums to which this insurance applies and for which an **insured** becomes legally obligated to pay as **damages** because of an **injury**. The **injury** must be caused by an accident arising from an **incident** during the **policy period**. The **injury** must also be caused by an **insured** under this policy." *Id.*

Injury is defined as "bodily injury, sickness, disease or death sustained by any one person." *Id.* at p. 3. Incident is defined as "any negligent omission, act or error in the providing of **professional services** by an **insured** or any person for whose omissions, acts or errors an insured is legally responsible." *Id.* Professional services consist of "services which are within the scope of practice of a chiropractor in the state or states in which the chiropractor is licensed." *Id.* The policy excludes from coverage "**claims** arising out of, based upon, or attributable to ... [a]n act or omission violating any federal or state statute, any county or municipal ordinance governing the commission of a crime," "[s]exual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined

5

act," or "[t]he intentional infliction of injury."  *Id.* at p. 6.

NCMIC asserts its policy does not afford coverage because there was no act of professional malpractice.  It argues that coverage is provided only when Balfour "negligently treats a patient, such as by injuring her during therapy," defendant's motion, p. 6, not for violating a duty to warn.  Balfour responds that whether she "owed the professional duties to warn and protect her minor patient from Saul is an issue within the exclusive province of the state court presiding over the underlying suit."  Balfour's response, p. 2.

The court does not agree with Balfour that it should refrain from adjudicating the scope of her professional duties as "the insurer's duty to defend is not based on "the outcome of the third-party action."  First Bank of Turley, 928 P.2d at 304.  While she argues that the duties she owed her minor patient "depend[] upon a particular 'set of circumstances' which have not yet been presented in the underlying suit," Balfour response, p. 8, she offers no information as to what those circumstances might be or how they might affect the scope of her professional duties.  The court recognizes that "[t]he insurer's defense duty is determined *on the basis of information* gleaned *from the petition (and other pleadings), from the insured and from other sources available to the insurer* at the time the defense is demanded (or tendered) . . . ."  First Bank of Turley, 928 P.2d at 303-04.  Balfour has not, though, come forward with any evidence she suggests bears on the coverage issue or requested that a ruling on the coverage issue be deferred to allow discovery.  *See* Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC, 451 Fed.Appx. 745, 748 (10th Cir. 2011) (unpublished) (Citing First Bank of Turley for the proposition that under Oklahoma law "the analysis is not

restricted to the four-corners of the complaint" when determining whether an insurer has a duty to defend).  Under these circumstances, the court concludes it is appropriate to resolve the issue under Fed.R.Civ.P. 12(b)(6) on the basis of the pleadings, plus the insurance policy and the Briner amended petition, which are attached to Balfour's third-party complaint and incorporated by reference.  *See* Alexander v. Adelberg, 2012 WL 4373404, at *1 (10th Cir. 2012) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference.") (internal quotations omitted).

The pertinent policy language is clear.  NCMIC's contractual obligations to defend and indemnify Balfour are triggered by an injury which "must be caused by an accident arising from an **incident**."  Doc.#15-3, NCMIC policy, p. 4.  An incident is limited to any negligent omission, act or error committed by Balfour in the provision of "services which are within the scope of practice of a chiropractor . . . ."  *Id.* at p. 3.  The policy provides coverage for injuries such as those that result from a misdiagnosis or a negligently performed treatment, or perhaps even a failure to warn about the consequences of certain physical activity on an injury being treated.  While the conduct alleged in the Briner lawsuit – Balfour's failure to warn her patient about Saul and allowing him to have access to the building where her chiropractic practice was located – may be a violation of some duty, it is not a violation of a professional duty Balfour owed A.A. as her chiropractor.  *See* First Bank of Turley, 928 P.2d at 303 at n. 11 ("The nature and kinds of risks covered by a policy limit the insurer's duty to defend).

Neither party cited, and the court did not find, cases that considered a coverage issue in similar circumstances.  However, courts have construed the term "professional services," when considering a professional services exclusion in a business or commercial insurance policy.  A "'professional act or service" has been defined "as one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or manual." Shelter Ins. Cos. v. Hildreth, 255 F.3d 921, 925 (8th Cir. 2001) (internal quotations omitted).  The warnings Balfour is alleged to have failed to provide do not fall within the scope of that definition.  The court is not attempting to determine the extent of a chiropractor's duties under Oklahoma law, but only concludes that the negligence alleged in the Briner lawsuit does not constitute an omission, act or error committed within the scope of her practice as a chiropractor.

The court recognizes that the petition in the Briner lawsuit refers to the claims against Balfour as "medical malpractice."  However, Briner cannot turn a premises liability or another type of negligence claim into one for medical malpractice by mislabeling it.  *See id.* at 926 ("[W]e are unwilling to transform the business insurance policy at issue into one for malpractice insurance.").

That determination does not, though, end the coverage issue because the policy included a supplemental legal defense endorsement.  The endorsement provides "supplemental coverage for **defense costs** incurred by the **insured** in certain **covered proceedings**." Doc.#15-3, NCMIC supplemental legal defense endorsement, p. 1. "Covered

8

proceedings" are limited to state disciplinary proceedings, federal professional review organization sanctions, wrongful billing and related proceedings, HIPAA and privacy related proceedings and civil proceedings for alleged sexual misconduct.  While the Briner lawsuit does allege sexual misconduct, coverage is provided under the endorsement only for "a civil action in state or federal court where the insured is alleged to have committed acts of sexual misconduct in the courses of providing **professional services** to a patient."  *Id.* at p. 3.  As Balfour, not Saul, is the insured under the NCMIC policy, and she is not alleged to have committed the sexual abuse, NCMIC is not obligated under the endorsement to provide Balfour with defense costs.

The court concludes on the record before it that there is no basis stated for recovery under the policy for the claims asserted against Balfour in the Briner lawsuit, or for concluding that NCMIC has a duty to defend or indemnify Balfour in the state court action. Accordingly, Balfour has not stated a claim against NCMIC for breach of contract or bad faith upon which relief may be granted and NCMIC's motion to dismiss is **GRANTED**.[3]

The claims asserted by Balfour and Dr. Deborah K. Balfour Chiropractic, P.C. in their third party complaint against NCMIC are **DISMISSED**.

---

[3]*Because the court concludes coverage does not exist under the policy, it does not have to determine whether the exemptions might potentially apply.*

**IT IS SO ORDERED**.

Dated this 5th day of March, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE