### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HANOVER AMERICAN INSURANCE ) <br> COMPANY, on behalf of all others ) <br> similarly situated, ) <br>   ) <br> Plaintiff, ) <br> vs. ) <br>   ) <br> GREGORY A. SAUL, *et al.*, ) <br>   ) <br> Defendants. ) <br>   ) <br> DEBORA K. BALFOUR and DR. ) <br> DEBORA K. BALFOUR ) <br> CHIROPRACTIC, P.C., ) <br>   ) <br> Third-Party Plaintiffs, ) <br> vs. ) <br>   ) <br> NCMIC INSURANCE COMPANY, ) <br>   ) <br> Third-Party Defendant. ) | NO. CIV-12-0922-HE |

### ORDER

Hanover American Insurance Company ("Hanover") filed this declaratory judgment action against Gregory A. Saul, his former spouse, Debora K. Balfour, her business, Dr. Debora K. Balfour Chiropractic, P.C. ("DKBC") and Matthew A. Briner, individually and as next friend of his ward, A.A. Hanover seeks a declaration of its obligations under a businessowner's policy it issued to "Gregory & Debora Saul D.C."[1] Briner sued Saul, Balfour and DKBC in state court ("the Briner lawsuit") to recover damages he and A.A.

---

[1] *Balfour states that her legal name is Debora K. Saul and her professional name, which she currently goes by, is Balfour. The title "DC" refers to a Doctor of Chiropractic.*

allegedly sustained as the result of Saul and Balfour's tortious acts. Balfour and DKBC asked Hanover to defend them, as their insurer, in that lawsuit. It has provided a defense, pursuant to a reservation of its rights to withdraw the defense and refuse to defend or pay any judgment that is rendered in the case against either of them. Here, Hanover asserts it is not obligated to defend and indemnify Balfour and DKBC in the Briner lawsuit. Balfour has counterclaimed, seeking a declaration that Hanover is required under the policy terms to provide her with a defense and indemnification. She also seeks an order requiring Hanover to provide her with counsel of her own choosing to represent her in the Briner action.[2]

Hanover has filed a motion for summary judgment, on both its claim and defendant Balfour's counterclaims for declaratory and injunctive relief.[3] Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Services, Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). DKBC did not respond to Hanover's motion and thereby confessed it. LCvR7.1(g). Having

---

[2]Balfour and DKBC filed a third party complaint against NCMIC Insurance Company ("NCMIC"), based on a professional liability insurance policy NCMIC issued Balfour and DKBC. Those claims were dismissed.

[3]Hanover states that its motion does not apply to Saul because he has not been served.

considered the submissions of Hanover, Balfour and Briner[4] in light of this standard, the court concludes Hanover's motion should be granted.

Background

Balfour is a licensed chiropractor, who conducts her chiropractic practice through DKBC, a professional corporation. Balfour is DKBC's sole shareholder. Balfour, individually, owns the commercial building where the chiropractic clinic is located. The address of that building (Building #1) is 8501 S. Penn. Avenue, Oklahoma City, Oklahoma. While they were married, Balfour and Saul purchased property at 8505 S. Penn. Avenue as joint tenants (Building #2). Balfour sued Saul for divorce in August 2010 and the marriage ended on March 7, 2011. Balfour was awarded both the 8501 and 8505 properties. The 8505 property is currently owned by KROW, LLC, a limited liability company Balfour organized in 2009.[5]

Balfour claims she notified Hanover's agent of the divorce proceeding before Hanover issued the renewal insurance policy that is at issue in this litigation. Hanover issued that policy – Businessowners Policy No. OZT2535464 – to Gregory and Debora Saul D.C., as the named insureds. The business type specified on the declarations page is "partnership," and "office" is the designated "business of the named insured." While 8505 S. Penn Avenue is listed as the address of the named insured, both the 8501 and 8505 addresses are included

---

[4]As Briner adopts Balfour's response to Hanover's motion, Doc. #54, the court will simply refer to Balfour's arguments.

[5]Under the terms of the divorce decree, Saul was to continue to receive rent from one rental unit at the 8505 property.

as the "described premises." The declaration page also lists a General Liability Broadening Endorsement for a "chiropractors office." Doc. #46-3, p. 12.

On February 23, 2012, Saul was charged by information in Cleveland County with multiple counts of raping A.A. and other crimes. Additional charges were added at the conclusion of Saul's 2013 preliminary hearing and he was bound over for trial. A.A. testified that the sexual assaults occurred at her school, where Saul was her teacher, at Saul's house and, in October 2011, in Building #1 at 8501 S. Penn Avenue. On March 5, 2012. Briner sued Saul, Balfour and Debora K. Balfour Chiropractic, P.C. in state court. He alleges that during September and October of 2011, A.A. was a patient of Debora K. Balfour Chiropractic, P.C. and Debora K. Balfour, having been referred to the practice by Saul. Briner claims Saul sexually assaulted A.A., and that one of the assaults and attempted assaults occurred in the office building where Balfour's clinic is located. Balfour is alleged to have been negligent and provided substandard care by failing to warn her minor patient of Saul's "history and propensity to sexually molest under age females" and allowing Saul to have unfettered access to the clinic building. Doc. #46-16, ¶17.[6] Her actions and inactions, which Briner also attributes to the clinic, are alleged to have facilitated "Saul's tortious actions against A.A., causing A.A. to suffer physical and mental pain, and immediate and future medical expense." *Id.* Balfour and DKBC notified Hanover when the Briner lawsuit was filed and asked it to defend them, which it has done, under a reservation of rights.

---

[6] *Page references for briefs and exhibits are to the CM/ECF document and page number. For example, Exhibit 16 to plaintiff's motion for summary judgment is referred to as Doc. #46-16.*

Analysis

The court's task is to construe the businessowners' policy, applying Oklahoma law.[7] It must determine whether Hanover owed Balfour and DKBC a contractual duty to defend and indemnify them with respect to the negligence claims asserted against them by Briner. Hanover asserts its policy does not provide coverage for three reasons: Balfour and DKBC are not insureds under the business liability coverage provisions of the policy, the "bodily injuries" for which damages are sought on behalf of A.A. were not caused by an "occurrence," as that term is defined in the policy and the claims asserted on behalf of A.A. do not seek damages because of "personal and advertising injuries," as that phrase is defined by the policy. Balfour responds that she can reasonably be regarded as a named insured and that, because the Briner lawsuit asserts a "humiliation" injury claim against her, she is insured under the policy's general liability coverage.

The pertinent legal principles are well established. Under Oklahoma law, insurance contracts are interpreted "in accordance with principles applicable to all contracts." Mansur v. PFL Life Ins. Co.,589 F.3d 1315, 1319 (10th Cir. 2009). The contract is "construed according to the plain meaning of its language," and, if unambiguous, the court "interprets the contract as a matter of law." *Id.* "When an insurance contract is susceptible of two meanings ... words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer." Phillips v. Estate of Greenfield, 859 P.2d

---

[7]*As this action was removed on the basis of diversity jurisdiction, state law applies. The parties appear to agree that Oklahoma law governs the dispute.*

5

1101, 1104 (Okla. 1993). "I[t] is the expectations of the insured that control" when "the terms of the contract are unclear, or when the contract is susceptible to two reasonable interpretations." Western World Ins. Co. v. Markel American Ins. Co., 677 F.3d 1266, 1271 (10th Cir. 2012); *accord* Mansur, 589 F.3d at 1319 (Because "[a]n insurance policy is considered a contract of adhesion in Oklahoma," if the contract is ambiguous, it is "construed in favor of the insured.").

A liability insurance policy, such as the policy issued by Hanover, "generally contains two basic duties – the duty to defend and the duty to indemnify its insured." First Bank of Turley v. Fid. & Deposit Ins. Co. of Md., 928 P.2d 298, 302-03 (Okla.1996). The insurer's duty to defend is broader than the duty to indemnify, and arises whenever the insurer "ascertains the presence of facts that give rise to *the potential of liability* under the policy." *Id.* at 303 (footnote omitted). "[T]here *need not be a probability of recovery*." *Id.* at 303 n.14. "[T]he insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the *possibility of a recovery* under the policy." *Id.*

The businessowners policy provides coverage for both property damage (Section I) and business liability (Section II). The parties' dispute centers on the provisions pertaining to business liability, which obligate Hanover to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or personal and advertising injury' to which this insurance applies," and "to defend the insured against any 'suit' seeking those damages." Doc. #46-3, p. 59. The insurance applies to "bodily

injury" and "property damage" if it occurs during the policy period and is caused by an "'occurrence' that takes place in the 'coverage territory.'" *Id.* It also applies to "'personal and advertising injury' caused by an offense arising out of [the insured's] business, but only if the offense was committed in the 'coverage territory' during the policy period." *Id.* at p. 60.

Hanover initially argues that Balfour and DKBC are not insureds under the policy's business liability coverage. The policy provides that "[t]hroughout this Coverage Form the words 'you' and 'your' refer to the Named Insured shown in the Declarations. . . . In **Section II-Liability**, the word 'insured' means any person or organization qualifying as such under Paragraph C-Who is an Insured." *Id.* at p. 16. Paragraph C states

>  1. If you are designated in the Declarations as:
>
> > a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
>
> > b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

*Id.* at pp. 69-70.

Hanover argues that because the "Gregory & Debora Saul D.C." are the named insureds and the business type is identified as a "partnership," "the partnership of 'Gregory and Debora Saul D.C.' is the 'you' in the [policy]." Doc. #47, p. 20. It claims the declarations designation of the insured's business -- "office" -- and the listed address of the named insured – the 8505 S. Penn. property, which Balfour and Saul owned jointly –

substantiate its position that the policy insured the Saul-Balfour partnership that owned the office building at 8505 S. Penn, not Balfour, individually, or the corporation DKBC.

Balfour denies that she ever formed any business partnership with Saul. She claims Hanover unilaterally selected that classification and that "partnership" refers to her joint ownership of Building #2 with Saul, as Hanover's agent knew the couple jointly owned that building and were both supposed to be insureds with respect to property coverage for it. Balfour asserts that "office" refers to the ownership of two commercial office buildings and not to her chiropractor's office, which is separately insured and described in the policy's general liability coverage. She contends that she is a "named insured" in her individual capacity and "the only 'Named Insured' for purposes of the *general liability* coverage for the chiropractic office." Doc. #53, p. 21.

The principal problem with Hanover's position is that the policy identifies individuals, not a partnership, as the named insureds.[8] As Balfour notes, the "Declarations undisputedly does <u>not</u> identify the business name of any partnership or business entity to be insured." Doc. #53, p. 17 n.3. No partnership or business entity is referred to anywhere on the declarations page. Hanover's own cases reflect the distinction. In <u>Milazo v. Gulf Ins. Co.</u>, 224 Cal.App.3d 1528 (Cal.App.2d 1990), the named insured on the policy was "'M.H.

---

[8]*As there is no evidence that Saul and Balfour were ever engaged in any type of partnership, if Hanover's argument that the Named Insured was a partnership was accepted, it would, as Balfour points out, "render all coverage under the Policy entirely illusory." Doc. #53, p. 23.*

Pingle, M. Miloza [sic] & Millard Ellis dba: Alexander's Choice Meats.'"[9] *Id.* at 1535 (emphasis added). In Jones v. Harper, 408 P.2d 56 (N.M. 1965), the insurance company "had in force a policy of insurance with defendant Alfred Harper and Frank H. Derrick Jr., d/b/a Consolidated Music Company." *Id. at* 57 (emphasis added). Here there is no "dba."

There are other problems with Hanover's argument. It asserts that the business of the claimed Saul-Balfour partnership was the 8505 office or building, yet the "described premises" on the declarations page include both the 8501 property and the 8505 property, the latter being property that Hanover admits Balfour owned individually. The declarations page also refers to "chiropractors office" in conjunction with additional liability coverage. Finally, Hanover admitted in its answer that "Debora K. Balfour, an individual, is a named insured and thus a 'you' as defined in the Hanover policy." Doc. #20, ¶13. The court agrees with Balfour that the policy "can be reasonably interpreted to include Balfour as a "Named Insured" in her capacity as the sole proprietor of the chiropractic office." Doc. #53, p. 16.

Having concluded that Balfour is a Named Insured, the next question is whether the claims asserted in the Briner lawsuit "give[] rise to the *possibility of a recovery* under the policy." First Bank of Turley, 928 P.2d at 303 n.14. The pertinent policy provision [Doc. #46-3,

 pp. 59-60, 74-75] states :

    A. Coverages

---

[9]The renewal policy had different individual names but included "'dba Alexanders [sic] Choice Meats.'" Milazo, 224 Cal.App.3d at 1535.

1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply ....

. . . .

b. This insurance applies:

. . . .

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

. . . .

15. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest. detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a

> person's right of privacy;
> f. The use of another's advertising idea in your 'advertisement"; or
> g., Infringing upon another's copyright, trade dress or slogan in your "advertisement".

The policy's "special broadening endorsement" [Doc. #46-3, pp. 88-92] adds the following paragraph ("h") to the definition of "personal and advertising injury."

> h. Discrimination or humiliation (unless insurance thereof is prohibited by law) that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is;
> (1) Not done intentionally by or at the direction of:
> (a) The insured; or
> (b) Any officer of the corporation. director, stockholder, partner or member of the insured; and
> (2) Not directly or indirectly related to an "employee", nor to the employment. prospective employment or termination of any person or persons by an insured.

Doc. #46-3, p. 90.[10]

Balfour contends the Briner lawsuit "potentially includes a claim for 'personal and advertising injury' against her in her capacity as the sole proprietor of the chiropractic office" because it includes "a humiliation injury claim."[11] She asserts that the petition in the

---

[10] *Even the "broadened" endorsement does not delete the requirement that the injury must arise "out of your business . . . ." Doc. #46-3, p. 60.*

[11] *Balfour does not contest Hanover's assertion that the policy does not provide coverage for any bodily injures A.A. suffered because they were not "caused by an 'occurrence'" as required by the policy. Doc. #46-3, p. 59 (Section II(A)(1)(b.)(1)(a)).*

11

underlying case

alleges that as a result of Balfour's negligence, Briner's minor suffered injuries arising out of the disgusting and objectively humiliating things that Saul allegedly did to her while inside Balfour's chiropractic office. There is no question that the Underlying Suit fairly alleges an injury to the feelings or reputation of Briner's minor. Therefore the Underlying Suit plainly seeks relief for an injury arising out of humiliation (a "humiliation injury" claim) within the meaning of the Policy's coverage for "personal and advertising injury."
Doc. #53, p. 27.

Balfour's argument fails for several reasons. For there to be coverage under the personal injury provision, the offense of "humiliation" must have arisen out of her chiropractic business. ("This insurance applies . . . to 'personal and advertising injury' caused by an offense arising out of your business . . . ." [Doc. #46-3, pp. 59-60, Section II.A.1(b)(2)]). Briner does not allege in the state court petition that Balfour personally committed the claimed offense, in other words, that she humiliated A.A.,[12] nor does he allege that the offense was committed by an employee in the conduct of Balfour's business. The critical actor was Saul, who had a relationship with Balfour, but not with her business. The court agrees with Hanover that neither Balfour's alleged "'failure to prevent access'" to the 8501 S. Penn property nor her failure to warn A.A. of Saul's asserted history and propensities was "a part of [or arose] out of the conduct of the named insured partnership's business." Doc. #47, pp.25-26.

However, a more fundamental problem with Balfour's position exists -- Briner sued

---

[12]*Such a claim would, though, be excluded from coverage as the policy does not apply to intentional discrimination or humiliation committed by the insured or at the insured's direction.*

her for negligence, not humiliation.[13]  Doc. #5-2. ¶17 ("Said actions and inactions [of Balfour] amounted to negligence and substandard care . . .").  *See* Vermont Mut. Ins. Co. v. Parsons Hill P'ship, 1 A.3d 1016, 1023 (Vt. 2010) ("Because an 'offense' means a tort as enumerated in the specific list, it does not include a breach of contract.").  As the court explained in Liggett Group, Inc. v. Ace Prop. and Cas. Ins. Co., 798 A.2d 1024 (Del.2002), when construing a similar personal injury clause:

> The policies at issue clearly do not extend coverage to negligence claims. The "injury to feelings" of "any person" language, upon which Liggett relies, must be read in context. Gaston County Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 524 S.E.2d 558, 563 (2000) (noting that the various terms of an insurance policy are to be "harmoniously construed").  In this case, it must be read with the preceding list of torts encompassing, broadly, libel, slander, and defamation. It cannot be read as an independent extension of coverage to all mental anguish allegations in products liability, or negligence, actions.

*Id.* at 1032.

The policy's use of the term "personal injury" is somewhat misleading. The coverage provided, while "labeled as coverage for personal injury damages ... is really coverage based on underlying claims of liability involving certain defined offenses."  Vermont Mut. Ins. Co., 1 A.3d at 1022.  "'[P]ersonal injury liability is a theory-based insurance coverage. It defines its coverage in terms of offenses, or theories of liability, not in terms of the injury sustained by the plaintiff.'"  *Id.* at 1022-23 (quoting Great N. Nekoosa Corp. v. Aetna Cas.

---

[13]Hanover correctly notes that the Briner petition does not specifically refer to humiliation. *See generally* Air Line Pilots Ass'n v. Twin City Fire Ins. Co., 803 A.2d 1001, 1006 (D.C. 2002) ("[T]he boiler plate language in the ad damnum clause requesting damages for humiliation is insufficient under the pleading standards of Virginia law to give rise to an obligation under the insurance policy to defend against an offense of 'discrimination or humiliation.'").

& Sur. Co., 921 F.Supp. 401, 416 (N.D.Miss.1996)); Liggett Group, 798 A.2d at 1032 ("Under North Carolina law, 'personal injury' coverage under a Commercial General Liability policy is limited to coverage for those torts specifically enumerated in the policy itself."). Because Balfour was not sued for one of the enumerated offenses, she is not entitled to either a defense or indemnification under the policy.[14] *See generally* Air Line Pilots Ass'n v. Twin City Fire Ins. Co., 803 A.2d 1001, 1006 (D.C. 2002) ("Our interpretation that the complaint's mention of humiliation was a description of injuries suffered, as opposed to a recognized tort claim, may appear to render the coverage provision for humiliation a nullity. Admittedly, the contract provision that states 'discrimination or humiliation,' and not 'discrimination and humiliation,' does cause some confusion. We think, however, that a common sense reading of the language in the contract makes sense when humiliation, which is not a known tort, is read in the context of discrimination, which can be pled as a substantive claim.").

The duty to defend is broad, but there are limits to an insurer's responsibilities set by the policy's language. The court concludes on the record before it that there is no basis for recovery under the policy for the claims asserted against Balfour or DKBC in the Briner lawsuit, or for concluding that Hanover has a duty to defend or indemnify either defendant in the state court action. Hanover is therefore entitled to summary judgment, on both its claim for declaratory relief and defendant Balfour's counterclaims for declaratory and

---

[14]Balfour does not cite any case demonstrating coverage under similar or even somewhat similar circumstances. The court does, though, recognize the lack of authority on point.

injunctive relief.

Accordingly, Hanover's motion for summary judgment [Doc. #46] is **GRANTED** as to both its claim and defendant Balfour's counterclaims.  The motion is also **GRANTED** as to  Dr. Debora K. Balfour Chiropractic, P.C., which confessed it.  Plaintiff's claim against Saul, who was never served, will be **DISMISSED** without **PREJUDICE**.

**IT IS SO ORDERED**.

Dated this 27th day of August, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE